**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GINA GUILMETTE,                         :         CIVIL ACTION NO.
                                        :         3:23 cv 1229
            Plaintiff,                  :
                                        :
v.                                      :
                                        :
UNUM LIFE INSURANCE COMPANY             :
OF AMERICA,                             :
                                        :
            Defendant.                  :         SEPTEMBER 20, 2023

**Complaint**

**Summary.**

1. Gina Guilmette is a 56-year-old former Residential Inspector at two different group homes for physically and mentally handicapped adults. Because of a variety of medical conditions, she left her job in November 2015. Unum began paying her long term disability ("LTD") benefits in August 2016. Unum paid her for *two years* because it recognized that she could not perform her "regular occupation." Then, starting in approximately August 2018, Unum paid her for almost *five more years* because it recognized that she could not perform "any occupation for which [she is] reasonably fitted by education, training or experience." In 2018, the Social Security Administration ("SSA") began paying her Social Security Disability Income ("SSDI") benefits based on its recognition that she cannot do any type of work. In March 2023, Unum terminated her benefits, despite her being as sick as she had been during the almost seven years it paid her benefits and despite her remaining unable to work in any way.

2. In July 2023, Ms. Guilmette appealed Unum's March 2023 benefit cutoff. The evidence she submitted with the appeal included supporting opinions from her primary medical treatment provider; statements in which she describes her inability to work; and bringing to Unum's attention that medical records it had in its possession, throughout the 2,900-page claim file, prior to its benefit cutoff, listed her treatment for 10 medical conditions and use of 12 daily

medications for those illnesses. Nonetheless, based primarily on the views of a California physician it paid to review the claim file, Unum upheld its benefit termination decision. Unum's ultimate benefit decision was arbitrary and capricious, unreasonable, and wrongful. Ms. Guilmette has proven through overpowering evidence that she cannot work in any job.

**Jurisdiction, Venue, and Service of Process.**

3. This Court has personal and subject matter jurisdiction over this case pursuant to ERISA 502 §502(e)(2) and (f), 29 U.S.C. §1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the breach took place in this district and Unum may be found in this district.

4. Venue in this Court is proper under ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), in that all defendants may be found in this district and the breach took place in this district.

5. Service of process is authorized in any district where defendants reside or may be found. ERISA §502(e)(2), 29 U.S.C. §1132(e)(2).

**The Parties.**

6. Gina Guilmette lives in Torrington, Connecticut. She is a participant in an employee benefit plan within, the meaning of ERISA §3(8), 29 U.S.C. §1002(8), and has standing to bring this action under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

7. Defendant, Unum Life Insurance Company of America, is a for-profit corporation whose principal place of business is at 2211 Congress Street Portland, Maine. Unum is the party exercising responsibility for processing claims made under the Community Options Disability Plan (the "Plan") and making final determinations as to participants' eligibility for LTD benefits. The Plan is an LTD plan issued to Community Options, a Connecticut-based company.

8. At all times relevant to the claims asserted in this Complaint, Unum purported to act as an ERISA claims fiduciary with respect to participants of the Plan, and specifically with respect to Ms. Guilmette, within the meaning of ERISA because it exercised discretion and control over all aspects of Plan administration.

2

**Statement of Facts.**

9. Gina Guilmette, 56, is a former Residential Inspector who worked for the adult disability group homes The Institute of Professional Practice and Community Options. At that job she would bathe residents, take them grocery shopping, drive them to visit family, clean their rooms, and do their laundry. She made approximately $29,000 per year for her full-time work at both locations.

10. Ms. Guilmette graduated from high school in 1985 and has no amount of college education at all.

11. Because of what Unum characterizes as "multiple medical conditions, along with chronic pain," Ms. Guilmette stopped working November 2015. Unum approved her for LTD benefits in August 2016.

12. Unum paid Ms. Guilmette LTD for 24 months under the policy language which deemed her eligible for such benefits if she was unable to perform the "material and substantial duties of her regular occupation due to [her] sickness or injury."

13. In August 2018, Ms. Guilmette was approved for SSDI, and Unum began reducing her gross monthly LTD benefit of approximately $1,500 by her SSDI benefit of approximately $1,000, bringing her net monthly Unum benefit to approximately $500.

14. After paying her for 24 months under the "regular occupation" definition cited above in paragraph 12, Unum recognized that she could not perform "the duties of any gainful occupation for which [she is] reasonably fitted by education, training or experience" and began paying her benefits under that criterion.

15. Recognizing that her health was not improving, Unum paid Ms. Guilmette benefits under the "any gainful occupation" standard cited above in paragraph 14 from August 2018 through March 2023 when it terminated her benefits.

16. In its March 24, 2023, benefit termination letter, Unum cited her ability to use the community garden at her apartment complex and picking up her small dog as evidence of her ability to work.

17. Ms. Guilmette requested from Unum her claim file, which is approximately 2,900 pages, approximately one-quarter of which consists of printouts of her Facebook posts.

18. On July 20, 2023, Ms. Guilmette appealed Unum's benefit cutoff.

19. In her appeal, Ms. Guilmette explained the severity of the following conditions, which the medical records already in her Unum claim file documented: type two diabetes, hypertension, hyperlipidemia, rheumatoid arthritis, fibromyalgia, interstitial cystitis, bladder incontinence, neck pain, scoliosis, and obesity.

20. In her appeal, Ms. Guilmette listed the 12 medications she was had taken over the years that Unum was paying her benefits, all of which were already listed in the medical records in her claim file: Albuterol, Lipitor, Mirabegron, Ilotycin, Buspirone, Colace, Cymbalta, Flexeril, Oxybutynin, Uribel, Prednisone, and Mobic.

21. In her appeal, Ms. Guilmette listed the 10 medications she was taking in July 2023, at the time of her appeal, most of which were already listed in the medical records in her claim file: Atorvaststin, Meloxicam, Oxybutynin, Myrbetriq, Metformin, Trazodone, Cyclobenzaprine, Clonazepam, Duloxetine, and Elmiron.

22. With her appeal, Ms. Guilmette submitted a July 2023 sworn declaration in which she described her constant pain; forgetfulness; need for daily naps; no improvement in her overall health since Unum began paying her benefits; decline in some aspects of her health since Unum began paying her benefits; and a statement "I cannot work in any capacity."

23. In her appeal, Ms. Guilmette provided a July 2023 opinion from her primary care provider, Glenell Morris, PA-C, in which Ms. Morris stated: "It is my medical opinion that Gina Guilmette is unable to work due to chronic health concerns, including chronic fatigue [and]

4

chronic hip and back pain. She is unable to sit or stand for any extended length of time. She cannot lift heavy objects" (emphasis added).

24. In August 2023, Unum sent Ms. Guilmette an opinion produced by its file-reviewing physician, Arlen Green, DO, a principal in a two-person Los Angeles area physical therapy practice. In his opinion, Dr. Green acknowledged that the "medical information reflects" that Ms. Guilmette "has multiple medical conditions including but not limited to overactive bladder, urge and stress incontinence, dysuria, depression, anxiety as well as polyarthralgia, inflammatory arthritis, fibromyalgia with pain in many parts of her body including joint pain, neck, back, hip and feet pain."

25. Dr. Green concluded that Ms. Guilmette has work capacity and that, he believed, "with an impairing condition, there is typically an escalation in treatment."

26. Unum paid Dr. Green for the opinion he produced.

27. Dr. Green never examined, met, or spoke to Ms. Guilmette.

28. Unum regularly pays Dr. Green to produce opinions regarding LTD claimants in other states whom he does not examine.

29. On August 24, 2023, Glenell Morris wrote a letter, which the undersigned emailed to Unum representative Maureen Turner, in which Ms. Morris wrote: "It is my medical opinion [that] due to Gina Guilmette's chronic pain from fibromyalgia and arthritis as well as the medications she takes and related side effects, she is unable to work" (emphasis added).

30. In response to Dr. Green's opinion, the undersigned sent a letter to Unum explaining that her limited medical appointments were because (as described below) she was nearly financially destitute and could not afford to attend medical treatment – including physical therapy suggested by Dr. Green – which her insurance would not cover.

31. On September 5, 2023, Unum wrote to Ms. Guilmette to inform her that it had upheld its March 2023 benefit termination decision.

5

32. In its September 5, 2023 letter, Unum wrote that "Ms. Guilmette's treatment provider (Glenell Morris, PA-C) agreed that Ms. Guilmette had sedentary work capacity." As discussed above, in paragraphs 23 and 29, during the appeal process, Ms. Morris twice stated that Ms. Guilmette was "<u>unable to work</u>" (emphasis added).

33. Using Dr. Green's words, Unum wrote in its September 5, 2023 letter, "With an impairing condition, there is typically an escalation of treatment," with no acknowledgement of the undersigned's letter explaining that Ms. Guilmette could not afford frequent treatments and therapies that someone with higher income and more comprehensive insurance could pursue.

34. Within days of writing the September 5, 2023 letter, Unum representative Maureen Turner left Unum after working for the Company for a relatively short time.

35. Unum's September 5 post-appeal final decision letter is a lazy regurgitation of the Company's March 24 initial cutoff letter, the former of which was written by a Unum employee preparing to leave her job who upheld an initial termination decision because it was the easiest and quickest way to resolve a claim.

36. On September 11, 2023, after Unum's September 5 letter had been written and mailed, but before Ms. Guilmette received it, Ms. Guilmette, through the undersigned, emailed Ms. Turner a photograph of her swollen and burning hand, caused by tying balloons at her daughter's birthday party the evening of September 9.

37. Since her benefit termination, and loss of her monthly Unum payment, Ms. Guilmette has been living on approximately $1,000 per month, or $12,000 annually.

38. Ms. Guilmette has an approximately $3,000 credit card balance, the minimum payments on which she recently stopped paying.

39. Ms. Guilmette lives in a government subsidized studio apartment, with monthly rent of $284, which she does pay out of her $1,000 monthly income.

40. Ms. Guilmette has a monthly bank loan payment of $135, which she does pay out of her $1,000 monthly income.

41. After her rent and bank loan payment, she is left with approximately $581 per month for food, toiletries, her cellular phone bill, clothing, and all other expenses. However, she does utilize Connecticut's Supplemental Nutrition Assistance Program ("SNAP") food program and receives free food from a local food bank which delivers to her apartment complex.

42. It is reasonable for someone who is unable to work and lives under the circumstances described in paragraphs 37 through 41 above to use an apartment complex's community garden to grow food; such activity does not reflect an ability to work.

43. As she pointed out to Unum, Ms. Guilmette is on Medicaid. She must skip all but the most crucial medical appointments because she cannot afford to pay out-of-pocket for treatment.

**Count One: Claim for Benefits.**

44. For the reasons explained in this Complained, Ms. Guilmette is due benefits under the terms of the Plan and has a right to recover them against Unum under 29 U.S.C. §1132(a)(1)(B), ERISA §502 (a)(1)(B).

45. Unum's failure to pay benefits was wrongful, and abuse of discretion, and otherwise unlawful.

WHEREFORE, Ms. Guilmette respectfully asks the Court to order:

1. Retroactive reinstatement of monthly benefits due under the terms of the Plan.

2. Prejudgment interest.

3. Costs.

4. Attorney's fees under ERISA §502(g).

5. Such other relief as the Court deems just and reasonable.

Dated: September 20, 2023

        THE PLAINTIFF: Gina Guilmette

        By    /s/ Ian O. Smith
        Ian O. Smith, ct24135
        The Law Office of Ian O. Smith, LLC
        P.O. Box 33
        Tolland, CT  06084
        E: iansmithlaw@outlook.com
        T: 860.539.2156

        HER ATTORNEY